United States District Court
Middle District of Florida
Jacksonville Division

**YAMILET DOMINGUEZ VELAZQUEZ,**

    *Plaintiff,*

v.                                            **NO. 3:18-CV-934-J-PDB**

**COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

# Order

Yamilet Dominguez Velazquez brings this action under 42 U.S.C. § 1383(c)(3) to review a final decision of the Commissioner of Social Security denying her application for supplemental security income dated January 20, 2015. Under review is a decision by the Administrative Law Judge ("ALJ") dated June 27, 2017. Tr. 25–40. Summaries of the law and the administrative record are in the ALJ's decision, Tr. 25–40, and the parties' briefs, Docs. 16, 17, and not fully repeated here.

The ALJ found Velazquez has severe impairments of fibromyalgia and spinal disorders. Tr. 27. The ALJ found she has the residual functional capacity ("RFC") to perform light work with additional limitations.[1] Tr. 29. For the RFC, the ALJ rejected an opinion of Miguel Rosada, M.D., a doctor Velazquez saw at least six times in 2014

---

[1] For the RFC, the ALJ found that Velazquez has limited English communication skills; can perform demonstration-only work tasks; can only occasionally balance, stoop, kneel, crouch, and crawl; can only occasionally climb ramps, stairs, ladders, ropes, and scaffolds; can have only occasional exposure to hazards; can perform only simple, routine, and repetitive tasks with only simple decision-making; can have only occasional, non-confrontational interactions with others; and cannot communicate in English with the public. Tr. 29.

and 2015.[2] Tr. 323–47. Dr. Rosada's opinion is in a "Fibromyalgia Medical Source Statement" he completed on June 8, 2015. Tr. 366–69. The statement contains limitations greater than the ALJ found, including that Velazquez would be off-task 25 percent or more in a typical workday and would miss more than four days of work a month if trying to work fulltime.[3] *Compare* Tr. 29 *with* Tr. 369. According to a

---

[2]The first medical record for Dr. Rosada is dated October 6, 2014, Tr. 342–47, but elsewhere Dr. Rosada states he treated Velazquez monthly beginning on June 13, 2014, Tr. 366. The record includes only visits on October 6, 2014; October 22, 2014; December 2, 2014; January 6, 2015; February 3, 2015; and June 8, 2015. Tr. 318–48, 370–72.

[3]In the statement, under "Does your patient meet the American College of Rheumatology criteria for fibromyalgia," Dr. Rosada checked "Yes." Tr. 366. Directed to "[i]dentify your patient's symptoms, signs, and associated conditions," he checked allodynia—hypersensitivity to touch, fatigue, chronic widespread pain, sleep disturbance, joint stiffness, muscle spasms, morning stiffness, cognitive dysfunction ("fibro fog"), numbness and tingling, hypothyroidism, GERD, anxiety, and depression. Tr. 366. He also checked "number of tender points" and wrote in "10–15." Tr. 366. Next to other "diagnosed impairments," he wrote "as above." Tr. 366. Next to "Prognosis," he wrote "poor." Tr. 366. Asked if Velazquez's impairments lasted or can be expected to last at least twelve months, he checked "Yes." Tr. 366. Asked if "emotional factors contribute to the severity of your patient's symptoms and functional limitations," he checked "Yes." Tr. 366. Directed to identify the location of Velazquez's pain, he checked cervical spine, chest, bilateral shoulders, bilateral arms, bilateral hands/fingers, bilateral legs, and bilateral knees/ankles/feet. Tr. 367. Asked to "[d]escribe the nature, frequency, and severity of your patient's pain," he wrote, "daily pain." Tr. 367. Directed to identify "any factors that precipitate pain," he checked fatigue, stress, movement/overuse, and sleep problems. Tr. 367. Directed to identify medication side effects that may have implications for working, he wrote, "none." Tr. 367.

On Velazquez's functional limitations in a competitive work situation, next to, "How many city blocks can your patient walk without rest or severe pain," Dr. Rosada wrote "2–3 blocks." Tr. 367. He circled that Velazquez could sit 30 minutes at a time before needing to get up and could stand 20 minutes at a time before needing to sit down or walk around. Tr. 367. He checked or circled that Velazquez could sit less than 2 hours in an 8-hour workday; could stand/walk for less than 2 hours in an 8-hour workday; needs a job that permits shifting positions at will from sitting, standing, or walking; would need to walk every 30 minutes during an 8-hour workday for 15 minutes each time; and would need unscheduled breaks during a workday (writing that she would need "20–30 minute[]" breaks "daily" and checking that she would have to lie down or sit quietly during such breaks). Tr. 367–68. He checked that she would not need a cane or other assistive device while engaging in occasional standing/walking and would not have to elevate her legs with prolonged sitting. Tr. 368. He left blank a question about how often she could lift and carry less than ten pounds. Tr. 368. He checked that she could rarely lift and carry ten and twenty pounds and never lift and carry fifty pounds. Tr. 368. He checked that she could occasionally twist, stoop (bend), crouch/squat, and climb stairs and could rarely climb ladders. Tr. 368. He checked that she could occasionally turn her head right or left and look up and could rarely look down

2

vocational expert who testified at the administrative hearing, either limitation would eliminate all work for Velazquez. Tr. 63–66.

After summarizing the medical records and analyzing Velazquez's subjective complaints, the ALJ discussed the opinion evidence and stated she was giving "great weight" to mental RFC findings by state agency psychological consultants Maxine Ruddock, Ph.D., and Nancy Hinkeldey, Ph.D.; "great weight" to a consultative psychological examination by Susana Barsky, Ph.D; "some weight" to a physical RFC finding by Thomas Bixler, M.D. (rejecting his opinion Velazquez can perform medium work); and "little weight" to Dr. Rosada's opinion. Tr. 33. For all but the latter opinion, the ALJ found the opinions were consistent or largely consistent with the evidence. Tr. 33. For the latter opinion, the ALJ explained:

> Dr. Rosada's opinion was overbroad and unsupported by the evidence and by his own treatment notes. For example, Dr. Rosada reported that the claimant would only be able to use her fingers for 5% of an eight-hour day, which is not supported by evidence of a hand disorder, motor weakness, or loss of grip strength. As his statements are not supported by the evidence, the undersigned gave little weight to Dr. Rosada's opinion.

Tr. 33–34.

---

(sustained flexion of neck) and hold her head in a static position. Tr. 368. He found she would have significant limitations with reaching, handling, and fingering bilaterally, limiting her to grasping, turning, or twisting objects with the hands for 10 percent of an 8-hour workday on both left and right; performing fine manipulations with her fingers for 5 percent of an 8-hour workday on both left and right; reaching in front of her body with her arms for 10 percent of an 8-hour workday on both left and right; and reaching overhead with her arms for 10 percent of an 8-hour workday on both left and right. Tr. 369.

Dr. Rosada checked that Velazquez likely would be "off task" 25 percent or more of a typical workday. Tr. 369. He checked that she would be incapable of even "low stress" work. Tr. 369. Asked if Velazquez's impairments would produce "good days" and "bad days," he checked "Yes." Tr. 369. Asked to estimate how many days Velazquez likely would be absent from work if she were trying to work fulltime, he checked, "More than four days per month." Tr. 369. Asked if Velazquez's impairments "as demonstrated by signs, clinical findings and laboratory or test results" are "reasonably consistent with the symptoms and functional limitations described in this evaluation," he checked "Yes." Tr. 369 (emphasis omitted).

3

Velazquez challenges the ALJ's treatment of Dr. Rosada's opinion, arguing she "unambiguously" satisfied her burden of establishing she is disabled through Dr. Rosada's opinion and the ALJ's evaluation of his opinion is "legally insufficient." Doc. 16 at 5–19.

A court reviews the Commissioner's factual findings with deference and legal conclusions under close scrutiny. *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984). The Commissioner's factual findings are conclusive if supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and alteration omitted). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

An ALJ must consider medical opinions with other record evidence. 20 C.F.R. § 416.927(b).[4] In assessing the weight to give a medical opinion, an ALJ considers the examining relationship; the treatment relationship; the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; supportability; consistency; specialization; and any other factor that supports or contradicts the opinion. *Id.* § 416.927(c)(1)–(6). An ALJ applies the same standards whether the medical opinion is from a treating physician, a consultative examiner, or a nonexamining, reviewing physician. *Id.* §§ 416.927(c), 416.913a(b)(1)–(2).

An opinion of a treating specialist is entitled to the most weight, while an opinion of a non-examining, reviewing physician is entitled to the least weight. *See*

---

[4]"For claims filed … before March 27, 2017, the rules in [§ 416.927] apply. For claims filed on or after March 27, 2017, the rules in § 416.920c apply." 20 C.F.R. § 416.927. Because Velazquez filed her claim for benefits on January 23, 2015, Tr. 171–79, the rules in § 416.927 apply here.

4

20 C.F.R. § 416.927(c)(1)–(2). "Of course, the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987). But an ALJ may not substitute her own opinion on a medical issue for that of a medical expert. *Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir. 1986); *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982).

To facilitate meaningful review, an ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate [her] reasons." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). A court will not affirm "simply because some rationale might have supported" the decision." *Owens*, 748 F.2d at 1516. Good cause to give less weight to a treating source's opinion exists if the evidence does not bolster the opinion, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the treating source's own records. *Phillips*, 357 F.3d at 1240. If finding inconsistencies, an ALJ should identify the inconsistencies. *Perez v. Comm'r of Soc. Sec.*, 625 F. App'x 408, 418 (11th Cir. 2015).

Here, the ALJ stated the weight she was giving to Dr. Rosada's opinion ("little weight") and stated in general terms valid reasons for rejecting Dr. Rosada's opinion ("unsupported by the evidence and by his own treatment notes"), providing a single example (a significant hand limitation despite no objective evidence of a hand impairment) from nearly forty sub-opinions in Dr. Rosada's Fibromyalgia Medical Source Statement, Tr. 33–34.[5] *See* 20 C.F.R. § 416.927(c)(3) (supportability factor). But the ALJ did not clearly articulate how Dr. Rosada's treatment notes or the

---

[5]The ALJ also found Dr. Rosada's opinion "overbroad" but did not explain what she meant by "overbroad." *See* Tr. 33. She presumably meant the limitations in his opinion are greater than necessary, which is just another way of saying the opinion is unsupported by his own treatment notes or the remainder of the evidence.

remainder of the evidence fail to support Dr. Rosada's opinion, and why they do is unclear considering fibromyalgia.

Fibromyalgia is a "complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." Social Security Ruling 12-2p, 2012 WL 3104869, at *2 (July 25, 2012). "[T]he symptoms and signs … may vary in severity over time and may even be absent on some days." *Id.* Fibromyalgia "often lacks medical or laboratory signs" and "is generally diagnosed mostly on [an] individual's described symptoms." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). For fibromyalgia, a treating physician's opinion interpreting the data may be even more valuable. *Stewart v. Apfel*, 245 F.3d 793 (table), No. 99-6132, 2000 U.S. App. LEXIS 33214, at *9 (11th Cir. Dec. 20, 2000) (unpublished). The absence of objective evidence alone is insufficient to reject a treating physician's opinion about a claimant's functional limitations for fibromyalgia. *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 64 (11th Cir. 2010).

Focusing on Dr. Rosada's opinion that Velazquez would be off-task 25 percent or more in a typical workday and would miss more than four days of work a month if trying to work fulltime, why the evidence or Dr. Rosada's treatment notes fail to support that opinion is unclear. Velazquez's activities and abilities (she can shop, drive, maintain self-care, perform light household chores, prepare simple meals, manage money, watch television, attend doctor's appointments, take medications, provide information to healthcare providers, maintain a good rapport with healthcare providers, follow instructions of healthcare providers, get along with others, spend time with family and friends, live with others, and appropriately deal with authority, *see* Tr. 28) do not undermine Dr. Rosada's opinion because none really speak to how long she can be on task during a typical workday or how many days a month she would have to miss if working fulltime. *See Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) (claimant's participation in everyday activities of short duration is

6

not inconsistent with treating physicians' opinions about sit-stand-walk limitations during 8-hour workday). Dr. Barsky's opinion does not undermine Dr. Rosada's opinion because Dr. Barsky cautioned that her assessment concerned Velazquez's "psychiatric functioning" without considering medical conditions that "may further impede her functioning." Tr. 364. The records of Marcus de Carvalho, M.D., and his successors at UF Health do not undermine Dr. Rosada's opinion because they treated her for mental-health impairments. Tr. 31. And the primary care she received at UF Health does not undermine Dr. Rosada's opinion—if anything it supports it—because it reflects Velazquez has disc bulging, back pain, and leg pain secondary to fibromyalgia.[6] Tr. 31.

There may be reasons to reject Dr. Rosada's opinion, but the ALJ has not clearly articulated any, warranting vacatur and remand. *See Phillips*, 357 F.3d at 1241; *Perez*, 625 F. App'x at 418.

Neither the single example provided by the ALJ, Tr. 33–34, nor the evidence now listed by the Commissioner,[7] Doc. 17 at 6–7, clarify the decision to reject Dr.

---

[6]Although the ALJ correctly recognized that physical examinations revealed few abnormalities, Tr. 30, her summary of the medical records also includes evidence that could support Dr. Rosada's restrictions, *see, e.g.*, Tr. 30 (reflecting that Velazquez had muscle spasms and 18/18 tender points), Tr. 31 (reflecting that Velazquez was maintained on multiple pain medications, including Tramadol).

[7]The Commissioner's argument is brief:

> Although Dr. Rosada is a treating physician, he examined [Velazquez] on only a few occasions in 2014 and 2015. Dr. Rosada's records demonstrated multiple trigger points and tenderness in the spine, but demonstrated a full range of motion with no joint tenderness or swelling. Dr. Thway, a rheumatologist, noted tender points and muscle spasms of the back, but normal extremities. Thus, the objective evidence supports the ALJ's reasons for discounting the opinion from Dr. Rosada.

Doc. 17 at 6–7. To the extent the Commissioner suggests Dr. Rosada's opinion is entitled to less weight because he treated Velazquez on only a few occasions, the suggestion is unavailing as both a factual and a legal matter. The record indicates Dr. Rosada treated her at least six times, which is greater than "a few." *See* footnote 2. And an ALJ may not reject a treating physician's opinion merely because of a "low number of examinations," particularly where, as here, the ALJ gives great weight to consulting or reviewing physicians who saw

Rosada's opinion. Setting aside that a court will not affirm simply because some rationale might have supported the decision, *see Owens*, 748 F.2d at 1516, both rely solely on the absence of objective evidence to support the opinion, which does not suffice for fibromyalgia, *see Somogy*, 366 F. App'x at 64.

The Commissioner's decision is **vacated**. The case is **remanded** to reevaluate Dr. Rosada's Fibromyalgia Medical Source Statement, Tr. 366–69, and take any other necessary action. The clerk is **directed** to: (1) enter judgment for Yamilet Dominguez Velazquez and against the Commissioner of Social Security under sentence four of 42 U.S.C. § 405(g) (as incorporated by 42 U.S.C. § 1383(c)(3)); and (2) close the file.

**Entered** in Jacksonville, Florida, on September 23, 2019.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c: Counsel of Record

---

the claimant only once or not at all. *Schink v. Comm'r of Soc. Sec.*, No. 17-14992, 2019 WL 4023639, at *8 (11th Cir. Aug. 27, 2019) (to be published).